At 1130, I think maybe the attorneys are here, both sides, so if you're ready, we'll go ahead and take up an Interest of Charles R. III, a minor, and then 518-0586. If you're ready, proceed. Can I have a piece of paper? Okay, sure. Thank you very much. Thank you.  May it please the Court, my name is Josh Reeves, and I'll be representing Mr. Charles O'Reilly, the respondent appellant. Issues we have in today's case are one, whether the appellant received ineffective assistance of counsel, and two, whether the Court erred in concluding the appellant was unfit. First, we would argue that there was ineffective assistance of counsel. Parents are entitled to effective assistance of counsel in a termination hearing because of the fundamental right that is at stake. The standard of view is that the appellant's counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability the result would have been different had there not been ineffective assistance of counsel. Also, we must look at the reasonable probability, which as defined by the case of Inouye A.R., as a probability sufficient to undermine the confidence in the outcome. Now, the appellant was represented by a public defender in this matter, and her representation of him fell below an objective standard of reasonableness. Appellant's attorney displayed a shocking lack of trial preparation strategy. Appellant's attorney failed to apply the rules of evidence to protect her client's interest. The State asked a foster mother in the hearing to speculate into the mind of a two-year-old child and how it would affect the child. The public defender did not object. Furthermore, Ms. Wilkie, a witness for the State, testified that changing placement for the child would cause trauma, which we would argue is a medical diagnosis, which is an expert opinion that the appellant's attorney should have objected to. Appellant's attorney failed to ask for an exclusion of witnesses, which allowed the witnesses to be influenced by each other's testimony at the hearing. The State argues that's a trial strategy. There is no strategy to be heard in that. It does not benefit her client in any way, and she didn't call any other witnesses. His attorney failed to object when the court itself questioned one of the State's witnesses by asking just for a blanket affirmation whether he agreed with all the prior witnesses' statements. We argue that's incredibly improper and prejudicial. Appellant's attorney failed to request an argument in either the fitness or the best interest hearing and failed to object to not getting to argue either one. The State would argue that the arguments are just part of trial strategy. When an attorney puts on minimal evidence, no witnesses, who could have testified to that relationship between the appellant and his other children as evidence of parental fitness? There is no discernible trial strategy, and when this is all taken as a totality, it's clear it was ineffective. We look at what point does trial strategy become a shield for just incompetence. There were no tactics used by the appellant's attorney. She was essentially just a warm body that sat next to Mr. Riley. The second problem of the test is reasonable probability. Now, I cannot place to you a percentage or a number on how the outcome was affected. What I feel confident in saying is that with Mr. Riley's counsel, he had a 0 percent chance, and with an effective attorney, his odds would have certainly been greater than 0. Move on to the court error in concluding that the appellant was unfit pursuant to 750 ILCS 50-1D. The trial court found the appellant was unfit for, one, failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. Two, failure to protect the child from conditions within his environment injurious to the child's welfare. And three, failure to make reasonable efforts to correct conditions that were the basis for the removal of the child from the parent during a nine-month period. We would argue that the appellant did make a concerted effort to get to know his child, and he displayed a reasonable degree of interest in the child's welfare. In making this determination, courts consider a parent's efforts to visit and maintain contact with the child, as well as other indications of interest, such as inquiries into the child's welfare. I'm citing in Ray Daphne. The court also must take into account various circumstances that may hinder a parent's ability to make regular visits. I'm also citing Daphne. When regular visits are not possible with the child, courts consider whether a reasonable degree of concern was demonstrated through letters, telephone calls, and gifts to the minor child. Now, when given the opportunity, Mr. Riley visited the child. He brought the child snacks, toys, and clothes, but unfortunately he became incarcerated. As a result of that, he could not see the child as often as he would like, and he was at the mercy of DCFS. The state argues he didn't write or make phone calls, but the child was an infant. And despite this, Mr. Riley still sent the child letters dated April 2017 and July 2018. Phone calls and letters otherwise, the child wouldn't have known a difference anyway. Now, under the circumstances, Mr. Riley did make concerted efforts to take a reasonable degree of interest in the child's life, and the court did not consider those factors. The state failed to provide any evidence showing a parent placed the minor child in an environment injurious to his welfare. The minor child was initially taken out of care because the minor child tested positive for THC, a psychoactive chemical in marijuana. There was no accusation of neglect against the appellant in that report, and since submitting our brief less than two weeks ago, the state legislature legalized marijuana for recreational use, and it was signed by the governor. And we would argue that had this occurred six months from now, the child would have never been taken out of custody anyways. And we... You're saying because the legislature passed legislation legalizing marijuana, that somehow would affect the law as far as whether a child has marijuana in their bloodstream or not? Judge, when I read the initial draft of the statute, it would appear that is no longer a cause to take a child out of care. Also, we would believe it's a stretch to impose what the mother did onto Mr. Wiley. He had no way of controlling her actions, but he was punished at a fitness hearing for it. Now, also in the state's motion to terminate parental rights, reference is commonly made to the appellant's domestic battery arrest on October 24th, 2016. However, the minor child was not present during that altercation because he had already been taken into custody by the state on September 22nd, 2016. And the Illinois Supreme Court has held that where a child has been removed from an injurious home environment and placed in foster care, a parent cannot be found unfit based on a failure to protect during the period that the child is in foster care. I'm citing NRACW-2002. But during that incident, this particular child was not present, but his other children were present, correct? I'm not sure, Judge. We would argue that it's improper to find that the appellant failed to protect the child from conditions within his environment injurious to child's welfare. We would argue that appellant made reasonable efforts to correct the conditions that were the basis for the removal of the child. The court held that the appellant had failed to make reasonable progress towards correcting the conditions that led to the removal of the minor child. The court also stated the appellant failed to make reasonable progress on the terms of the service plan. We would argue the appellant made numerous gestures that demonstrated his commitment to improving his relationship with his son. The appellant completed mental health, outpatient rehab, parenting classes, and attended Narconics Anonymous. The appellant had also signed up for domestic violence classes, but it was a 24-month program. Further, while the appellant was incarcerated, he did drug seminars. He was incarcerated at a maximum security prison, so his options for services were limited and nothing else was offered to him. Counsel, in reviewing the record, isn't it true that the respondent was incarcerated for seven to eight months of a nine-month period from November 28, 2016, to August 27, 2017? Yes, Justice. And the second nine-month period was August 28, 2017, to May 27, 2018, and he was then incarcerated for the entire nine-month period? I believe so, Judge, yes. The State will point to the fact that he failed a drug test shortly after completing drug counseling. However, the standard is not perfection, it is progress, and we would argue that the appellant should not be held to a standard that's impossible to meet. As this Court is well aware, users of drugs are drug addicts usually for life, and they have setbacks, and that's what we would argue happened. We would argue that he still made reasonable efforts to progress forward, and for that reason, we argue that the Court erred, that he failed to make reasonable efforts to correct the conditions. Thank you. Thank you. May it please the Court, Counsel, Jessica Book for the State. To answer your question, Your Honor, yes, the appellant's other children were present when the domestic violence occurred, and he was charged with domestic battery. The minor issue was not what the other children were. A trial court's finding of unfitness is regarded great deference, and it can only be reversed if it's against the manifest weight of the evidence, and the evidence in this case overwhelmingly establishes that the appellant was unfit. Any of the grounds listed in the Adoption Act allow the trial court to find the appellant unfit. The trial court found three reasons, the failure to maintain a reasonable degree of interest, concern and responsibility, failure to protect the child from conditions in the environment injurious to his welfare, and failure to make the reasonable efforts to correct the conditions. The first issue, the failure to maintain reasonable degree of interest, concern and responsibility is objectively reasonable, and a demonstration of some interest or affection does not equal fitness. The defendant tries to claim that he could not make visitation because he was incarcerated in the Department of Corrections for 15 months, and he established his concern through letters, phone calls and gifts. He did not write any letters, and he made one phone call. Wasn't there one letter? One letter. He referenced one letter. Appellant's counsel referenced one letter. I believe that there was testimony that there were no letters brought by one of the caseworkers. I think it was Specialist Wilkie. Regardless, one letter or no letters, it's still very few letters, if next to nothing. That letter was written to the child's social worker? Yes. Okay. And then the phone call, I believe, was also to the caseworker. Counsel brought up that he believes it was useless because the child couldn't respond, so he didn't write letters or phone calls because the child was only two years old. But he could have written the letters to the caseworker in order to establish and show his concern or interest in the child. The caseworker could have responded then how the child was doing. He did have gifts to the child, but the caseworker pointed out that they were not appropriate gifts and that they were sugary foods and other things like that, not what a child of that age would require. However, I believe the State believes that what he showed, the reasonable degree of concern that is required under this, was not established with one letter and one phone call. For that 15 months, he was incarcerated, and the incarceration was his own fault. It was for the domestic battery that occurred after the case was open. He did attend substance abuse counseling, got a certificate, yet after that he was hanging out with buddies, and I believe he testified that things just happened. So he would have had to start all the substance abuse counseling over again. He enrolled in domestic violence classes, which he was told was a major issue that he needed to work on. He had multiple domestic battery arrests, violation of order protection arrests in his background, not including the one from October 2016. He was told he needed to work on the domestic violence. He did the assessment while he was paroled, and it was with the Carbondale Police Department, I believe, and he attended one class, but he was required to attend 24 classes. And he didn't attend the rest of the classes because he said his car broke down. He could have switched the location for the classes up closer to where he lives. Regardless, the trial court found that basically you didn't do what you needed to do. You had plenty of months to do it after you were released from DOC and you did not take the classes that you were supposed to. With the second issue, the failure to protect child from conditions in the environment that are injurious, certain actions of the defendant or of the appellant may be indicative of an environment that could be continuously injurious to the child's welfare. And the trial court found that his issues with domestic violence and the domestic battery that occurred with the mother of the minor here and his other children established, and that happened after this case was open, established that he was not correcting it. And he had continued drug use. It wasn't just he did the substance abuse classes and everything was A-OK. He used drugs again after that, and that was very close to the hearing. And what is our standard of review? Your standard of review, I believe the standard of review is the manifest way to the evidence. The state had the burden by clear and convincing evidence. At the trial level, the state has the burden by clear and convincing evidence, but the burden here is that our review is manifestly of that. Yes, Your Honor. Please. I should have clarified. I did not understand which level you were asking about, and I apologize. Go. Okay. So the defendant also engaged in victim blaming. The caseworker pointed out that the defendant had told her that the victim in the October domestic battery would not have been hurt if she hadn't grabbed him because his triggers are physical contact and people insulting his intelligence, and that was on R80 and 81. His general attitude towards the case is also was pointed out in that he stated he would do whatever necessary while the case was open, but once the case was closed, he was going to go back to being himself, and that's at R45. But the trial court found that he couldn't even do what was necessary while the case was open. He did not establish a reasonable degree of interest, concern, or responsibility, and any one of the three of those can be a basis for this issue. He failed to protect the child from injurious conditions. And as far as the to make reasonable efforts, it's a subjective requirement. It is subjective. So you would look at what he is capable of doing, but even looking at what he is capable of doing does not establish that he made reasonable efforts. Other conditions that are discovered as a result of the initial condition can be required to be corrected as well, and he did not participate in domestic violence counseling. He used drugs. He made no progress, and the caseworker even testified that he made no progress. One thing that counsel pointed out was that when the child was initially taken, it was because the child tested positive for THC because his mother used while he was pregnant. The trial court pointed out that the appellant lived with her at the time and could have prevented her from using the drugs while they were pregnant, and the fact that marijuana is legalized in any state at all doesn't equate that it's okay for the mother to subject the fetus to that. It's the same thing as alcohol. A pregnant woman is not supposed to drink alcohol while she's pregnant, but alcohol is legal. So the trial court found that the appellant failed to maintain a reasonable degree of interest, concern, or responsibility, failed to protect the child from the injurious environment, and failed to make the subjectively reasonable efforts. And based upon evidence in the records, defendants on fitness is not against the manifest weight of the evidence and should be affirmed. With regard to the ineffective assistance of counsel, Strickland applies the same standard as in criminal cases, and it's the two-part, the deficiency had to be below an objective standard of reasonableness, and he has to establish that he suffered prejudice because of that. Can you point out to me where the appellant has suggested in his brief that there was prejudice? On the pages of his brief. Where in the brief or in his argument has he suggested prejudice? He did not discuss prejudice so much as focused on the deficient representation that they had. Doesn't the appellant have a reasonable probability of prejudice, burden to prove that? I'm sorry, Your Honor. Doesn't the appellant have a burden to prove a reasonable probability? Yes, it's a two-part. He said he was prejudiced by his ineffective counsel. Yes, and here that's not the case because even if he established that the attorney's performance was deficient, the evidence here is so overwhelming that he was unfit, that he can't establish that he suffered prejudice as a result of that. And you have to prove both of them, the first and the second issue. A lot of what he said, his attorney had no meetings or anything with the appellant. There's nothing in the record to suggest one way or the other. As far as expert testimony, an expert has to be deemed an expert by the court, and it's the caseworker. And what the caseworker was asked was in her realm of experience being a caseworker with children in the foster care system. But it wasn't expert testimony, so there's no expert testimony to object to. The question to the foster mother about if the child would be upset if taken from her was a proper question because the child is too young to testify on the stand, but the foster mother had experience with the child and could gauge the reactions and how the child would respond to certain things. And she testified that the child was very close. He called his foster sisters sissies and felt like he was part of the family, called them the foster parents mom and dad. Has the child been in the foster system since birth? I believe the child was born, I want to say August 19th, and they were in Colorado at the time. They moved back, and I believe it was around September 19th. Sometime between September 19th and September 22nd, they took the child into foster care, and the child had been in the foster family since that time. It was the same family. Same family?  Same family? Yes. Yes, Your Honor. So a lot of what an appellant is arguing establishes that the attorney was deficient. It's either left to trial strategy, like whether witnesses should be excluded is trial strategy. There's no rule out there that says witnesses have to be excluded. Well, counsel argues what possible benefit would an appellant exclude witnesses. What possible benefit could that be from a strategic standpoint? I believe it is whether or not there is a possible benefit would be something that his trial counsel could answer. But once again, it is within the realm of trial strategy. She can decide if she wants him excluded or not, and there's nothing on the record that says why she did it or why she didn't do it. So to guess why she didn't. Can you have horrible strategy, and you still do, and call that strategy? You can't have horrible strategy. That would fall below an objective standard of reasonableness. But to say that not excluding witnesses is horrible strategy would be, or it could be not the best strategy, but it doesn't fall below that standard to where it made the proceedings a farce or a sham. It is a decision that trial attorneys are faced with all the time, whether or not you want to exclude witnesses. But prejudice is still required. Yes, yes. And he not only is it our position that the attorney did not exhibit deficient counsel, we also don't think he suffered prejudice because of all the evidence that was presented. And it wasn't just the state's evidence via their witnesses. There were numerous reports that were entered into evidence, and the trial counsel looked at that, or the trial court looked at that. And then the defendant testified for himself, and his testimony did not help him. He said he couldn't make it to the 24 classes because it's 24 classes and that ain't going to happen overnight. He couldn't make it because his car broke down, but there were months. It was months that he couldn't make it, and his car was broken down. He could have had it fixed. He could have moved the classes closer. He testified he used drugs because he was hanging out and stuff happened, and that was after he attended the substance abuse counseling. And the fact that he said he was going to go back to being him after the case was closed. So the state believes that the finding of unfitness was proper and should not be overturned, and that there was no ineffective assistance of counsel. Thank you. Thank you, Counsel. Reveto? Counsel's argued a few points that we would disagree with. First, about the letter he wrote. I think they're saying one letter, that he could have kept writing letters to establish a reasonable degree of care for the benefit of the caseworker. We would argue that the letters would be for the benefit of the child, not to just establish a reasonable degree of interest. Two, she continues to talk about that he failed a drug test, and that was right after he completed drug counseling. As I've argued previously, it should be progress and not perfection. What was the failure for? Which drug? I believe it was amphetamine and THC. Do you know the date? I do not. Three, the argument is he should have stopped the mother from smoking marijuana while she was pregnant. We don't know when she had smoked marijuana to begin with. She could have very well done it when he wasn't there. There was no evidence to support it either way. And I think it's quite a stretch to say you can prohibit someone's actions just by being present or living in a household together. She also said that you're not supposed to drink alcohol whenever you're pregnant, and the same with marijuana. I know plenty of women that drink wine or anything else while they're pregnant. But it's not reason to take the child out of custody or to hold the other party liable. She talks about the foster mother speculating. The foster mother was biased. She had said she already wanted to adopt the child. Of course she was going to speculate that the child would have trauma because it was for her benefit. She continues to talk about trial strategy. I would say there was no strategy. You can say anything is trial strategy, but the lack of strategy is not just horrible strategy, it's no strategy. We would argue that Mr. Riley would have been just as well off pro se without an attorney. And we would argue that is prejudicial, that the lack of any strategy or client witnesses or objections in the totality shows prejudice against my client. How does that suggest that there is a reasonable probability of a different outcome? Your Honor, I would argue that the probability under his current counsel was zero. He had zero chance of winning. With an effective attorney, I would argue that it would be somewhat greater than zero, which increases the probability. Can you point me to anything in your brief that cites to authority on that point? I do not, Judge. But we would argue that the State has failed to show ‑‑ we would argue that there was ineffective assistance of counsel, that the court error, including the appellant, was unfit, and the State failed to provide any evidence showing that the appellant was placed in a ‑‑ the minor child was placed in an environment of injurious to his welfare. Thank you. Thank you, counsel, for your arguments. The court takes the manner of five minutes to issue the brief.